**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **CLARENCE ASHLEY** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. 6:03-CV-004** |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of the Social** | § | |
| **Security Administration** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Brief (Doc. No. 16), Plaintiff's Amended Brief (Doc. No. 17),

Defendant's Brief in Support of the Commissioner's Decision (Doc. No. 18), and the Social Security

Record filed in this case (cited as "Tr.").

## PROCEDURAL HISTORY

On June 23, 1999, Plaintiff Clarence Ashley ("Plaintiff") applied for Disability Insurance

Benefits, alleging inability to work due to lower back pain and limited mobility.  After his claim was

denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law

Judge ("ALJ"), which was held on July 13, 2000.  The ALJ denied Plaintiff benefits in a decision

issued July 25, 2000.  Plaintiff appealed the decision of the ALJ to the Appeals Council. On

November 14, 2002, the Appeals Council denied Plaintiff's request for review of the ALJ's decision,

and the ALJ's decision became the final decision of the Commissioner of the Social Security

Administration ("Commissioner").  On January 7, 2003, Plaintiff brought this action pursuant to 42

U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Plaintiff disability

benefits.

## ISSUES PRESENTED

Plaintiff filed a new application for disability benefits after the ALJ's July 25, 2000 decision,

but before the November 14, 2002 decision of the Appeals Council.  Plaintiff was granted Disability Insurance Benefits effective September 1, 2001 under his new application, which contained additional medical records dated after July 25, 2000, the date of the ALJ decision. Plaintiff contends that the Commissioner's decision that Plaintiff was not disabled within the meaning of the Social Security Act between January 1, 1997, Plaintiff's alleged onset date, and July 25, 2000, the date of the ALJ's decision on his first application, is not supported by substantial evidence and is not based upon the proper legal standards.

## STATEMENT OF THE CASE

Plaintiff contends that he has been unable to engage in substantial work activity since January 1, 1997 due to lower back pain and limited mobility.  Plaintiff, who was *pro se* at the time, was advised of his right to be represented at the hearing by an attorney but knowingly and voluntarily waived his right.[1]  A vocational expert testified at the hearing.

### Plaintiff's Testimony

Plaintiff testified that he was born on February 17, 1950 and was 50 years old at the time of the hearing.  Tr. 182.  As for his educational background, Plaintiff graduated from high school.  *Id.* He also completed some college work.  *Id.*  He testified that he stands approximately 5'10", weighs approximately 210 pounds, does not use an assistive device such as a crutch or cane and states that he is ambulatory and drove himself to the hearing.  Tr. 183.  He explained that he can drive for around thirty to forty-five miles before needing to stop and get out of the car.  Tr. 184.

Plaintiff testified that the last time he actually worked full-time was in 1993.  Tr. 185.

---

[1]Counsel was appointed as Plaintiff's representative on March 27, 2002, and counsel filed the Request for Review of the ALJ decision.  Tr. 6A.

Plaintiff did not remember earning $7,000 in1995 but guessed that could have been working for Car Quest.  *Id.*  He worked part-time for three months in 1998 for a convenience store and testified that he could have continued working that job full-time.  Tr. 186.

As far as daily activities, Plaintiff testified that, for the last three or four years, he does normal chores, feeds his animals, and performs normal tasks around the house, such as mowing his yard.  Tr. 187.  He explained that he has a riding lawnmower and has to mow his yard in sections at a time.  *Id.*  Plaintiff stated that he lives by himself, fixes his own meals, and take cares of his own housework.  He explained that he doesn't do mopping and sweeping very often.  *Id.*  He does his own shopping.  Tr. 188.  Plaintiff testified that he would have trouble standing for more than a minute or walking more than 50 feet.  *Id.*  He testified that can he sit for approximately an hour to an hour and a half before needing to stand up, move around, or readjust.  Tr. 189.

Plaintiff explained that he did not want to have further surgery, even though surgery had been recommended.  Tr. 189-90.  He testified that he always has pain, and that the pain has increased within the last eight months or so to a year.  Tr. 190.  He testified that taking medication reduces his level of pain so that he can go about his business.  Tr. 191.  He testified that taking pain medication relieves his pain for two or three hours.  *Id.*

As far as hobbies, Plaintiff stated that he enjoys working with animals that he keeps on his property.  *Id.*  He takes care of cattle and hauls feed sacks.  Tr. 192.  He stated that he thought he could lift 20 to 25 pounds.  *Id.*  He explained that lifting is not a difficulty; walking is the problem. *Id.*  He testified that he keeps a stool in the bathroom to sit on when he shaves and a seat in the shower.  Tr. 193.  He has trouble sleeping because of the pain.  *Id.*  If he takes medications, it helps him to then go back to sleep.  *Id.*  Plaintiff also raises shrubbery and nursery stock.  *Id.*

Plaintiff testified that Dr. Kemp, the HMO doctor at Kaiser, prescribed Prozac, but Plaintiff stated that he did not take it on a regular basis.  Tr. 195.  Plaintiff testified that he would rather work than draw a government check.  *Id.*; Tr. 208.  Plaintiff testified that he thought he could work, but he runs into the problem of people being afraid to hire him due to "the litigious society we got right now and the liability laws that employers are afraid to take a chance."  Tr. 196.

### Medical Records

The following is a summary of Plaintiff's medical records which are relevant to the issues presented in the instant case.[2]

In 1981, Plaintiff underwent the last of a series of back operations, including laminectomies and a fusion at L4-5, S1.  Tr. 106-110.  Plaintiff returned to work after recovering from these surgeries. Pl.'s Br., at 4.

In March 1997, Plaintiff sought treatment at Kaiser Permanente for chronic back pain.  Tr. 131. Plaintiff complained of numerous musculoskeletal complaints, including pain in his hands, elbows, right shoulder and back.  Tr. 129-30.  By May 1997, he reported that the pain radiated to his legs.  Tr. 128.  By November 1997, his records note intractable pain.  Tr. 126.  In December 1997, Plaintiff complained that his pain had increased and that the pain medications he had been taking were losing their effectiveness.  Tr. 125.  In February 1998, Plaintiff was again noted to have intractable lower back pain which was well-controlled on Vicodin.  Tr. 124.  The records note that

---

[2]Plaintiff also submitted medical records from Physician's Pain Management of Tyler, dated March 21, 2002 through June 17, 2002, a letter from W.J. Garrett, M.D. dated June 14, 2002, and past due statements for 2002. The later information, provided by Plaintiff's representative, is not material to the issue of whether Plaintiff was disabled on or before July 25, 2000, the date the ALJ ruled on the issue of Plaintiff's disability.  The Appeals Council returned the evidence to Plaintiff and advised Plaintiff that if wished to receive a determination on the issue of disability after July 25, 2000, he would have to file a new application and submit the additional medical records in support of his new claim.  Plaintiff was found disabled as of September 2001 based on the filing of the subsequent application.  *See* Pl.'s Br., at 13.

the doctors wanted to closely monitor his usage of the Vicodin.  *Id.*  In April 1998, the records show that Plaintiff was noted to be increasing the dose of his pain medication.  Tr. 123.  Again, in June 1998, Plaintiff increased his use of pain medicine because his back pain was worse in the summer months due to his increased activity.  Tr. 121.

Plaintiff's complaints of back pain continued into 1999.  Tr. 132-36.  After Plaintiff filed for disability in July 1999, an internal consultive examination was performed in September 1999 by Neil Satyu, M.D.  Tr. 137.  Plaintiff complained that his lower back and left leg hurt all of the time and that any activity increased the pain.  *Id.*  The doctor's examination indicated that movement of Plaintiff's  lumbar spine was limited by about 20 degrees in all directions.  Tr. 138A.  He was able to bend down to within 8 inches of the floor.  *Id.*  Straight leg raising was positive at 45 degrees bilaterally.  *Id.*  He was tender over the lumbar region.  *Id.*  The medical exam further revealed that Plaintiff had no gross motor or sensory deficit.  *Id.*  His gait was normal.  *Id.*  He was able to sit, stand, and walk without discomfort.  *Id.*  He was able to walk on his heels, toes, and tandem walk. *Id.*  Movements of all extremities were normal and there was no edema, cyanosis, or clubbing, and no wasting of muscles.  *Id.*

The diagnostic impression of X-rays of Plaintiff's lumbar spine taken in September 1999 included straightening of the lumbar spine suggesting paraspinous muscle spasm.  Tr. 139. Degenerative changes included disc space narrowing at L1-2, L4-5, and L5-S1.  *Id.*  In sum, Dr. Satyu's impression of Plaintiff was that he suffered from 1) chronic low back pain; 2) degenerative joint disease; and 3) arthralgia.  Tr. 138A.

In October 1999, Plaintiff underwent magnetic resonance imaging of the lumbar spine. Tr. 140-41.  The findings included a desiccated and collapsed disc at T11-12, a small midline protrusion

at T12-L1, diffusely protruding posterior annulus at L2-3, marked spinal canal stenosis at L3-4, and desiccated and collapsed disc at L5-S1.  *Id.*  There was no recurrent herniation at L4-5. Tr. 141.

On December 15, 1999, W.J. Garrett, M.D., Plaintiff's treating physician, stated that the magnetic resonance imaging findings indicated that Plaintiff was permanently disabled.  Tr. 151. This physician also stated, in May 2000,  that Plaintiff continues to have a gradual deterioration in his ability to walk, stand, or sit and that surgery would not improve Plaintiff's condition.  Tr. 153. However, Dr. Garrett stated that Plaintiff can maintain a certain quality of life through the use of medication.  *Id.*

In addition, in May 2000, another treating physician wrote his opinion that Plaintiff can walk, but is limited to the distance of about one block before having radial pain, consistent with spinal stenosis.  Tr. 152.  This same doctor opined that Plaintiff can control his pain with medication, but is still very limited in his activity.  *Id.*

On June 13, 2000, Dr. Carol H. Clark, Ph.D. performed a psychological evaluation of Plaintiff.  Tr. 154.  Plaintiff was found to be functioning in the range of average intelligence.  Tr. 155.  Personality test data indicated significant emotional problems in anxiety and depression.  Tr. 156. Dr. Clark diagnosed Plaintiff with, among other things, dysthymic disorder, generalized anxiety disorder, and a personality disorder.  *Id.*  Plaintiff's global assessment of functioning (GAF)[3] was estimated at 60 which, according to Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, indicates moderate impairment in functioning.  Tr. 156.  His prognosis was considered fair. Tr. 156.

---

[3]GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning."  *See Boyd v. Apfel*, 239 F.3d 698, 699 n.2 (5th Cir. 2001).

Additionally, Plaintiff submitted records following his ALJ hearing but prior to the decision by the Appeals Council, and they are summarized below.

Plaintiff was seen on September 14, 200 by Dr. Todd M. Raabe of East Texas Orthopedics and Sports Medicine.   Tr. 157-59.   Dr. Raabe diagnosed Plaintiff with spinal stenosis and degenerative disc disease and noted that Plaintiff will require a lumbar decompression and extension of his fusion cephalad to his previous fusion.   *Id.*   Dr. Raabe noted that Plaintiff stated he is ready to proceed with operative intervention at this point.   Tr. 158.

Plaintiff also submitted records from a November 6, 2001 visit to R. W. Rodgers, D.O. with Physician's Pain Management of Tyler.   Tr. 162-63.   Dr. Rodgers diagnosed Plaintiff with chronic, intractable lumbar pain syndrome.   Tr. 163.   He opined that Plaintiff is not going to improve with time and most likely will deteriorate with time.   *Id.*   He concluded that Plaintiff is not able to work and not able to stand, lift, or bend for any appreciable length of time.   *Id.*   According to Dr. Rodgers, Plaintiff has a chronic, intractable situation that will not resolve with time and will become worse.   *Id.*

Plaintiff also submitted a disability determination, form DD214 dated April 14, 1970, from when Plaintiff was in the service.   Tr. 160.

### Vocational Expert's Testimony

A vocational expert ("V.E.") testified that Plaintiff's past relevant work has essentially been as a salesperson, light and semi-skilled, either as a route salesperson or as an auto parts sales representative, traveling approximately four states.   Tr. 199. That work is considered light and semi-skilled.   *Id.*   His work as a district manager in three different jobs, all classified as a sales background, qualified as light and skilled.   Tr. 200.

7

The ALJ defined the exertional categories found in the Social Security Regulations and referred primarily to the light work and sedentary classifications. *Id.* The ALJ posed a hypothetical to the V.E. that assumed Plaintiff to be 46 to 50 years of age with a high school plus education and past relevant work history as described, and who had the same impairments, including chronic lower back pain, Plaintiff's status post multiple back operations, degenerative joint disease, and arthralgia. Tr. 201. The ALJ further asked the V.E. to assume a dysthymic disorder, otherwise known as depression, and a generalized anxiety disorder. *Id.* The ALJ then asked the V.E. to consider that Plaintiff would need to alternate his standing and walking through the workday at 30-minute intervals and a low stress work environment with simple to detailed but not complex job instructions, due to possible distraction from pain. Tr. 202. The V.E. testified, that considering those limitations, Plaintiff could not perform his past relevant work because it would require a lot of standing, walking and traveling. *Id.* The V.E. further testified that any skills or semi-skills obtained in past work would not transfer to other light work as the ALJ defined in her hypothetical because of the sitting and standing requirements. *Id.*

The ALJ then asked the V.E. to assume that Plaintiff could perform no more than sedentary work as generally defined by the regulations, that would need to be a low stress work environment with simple to detailed but not complex instructions, with the additional limitations of the need to alternate positions, and sitting and standing at 30-minute intervals. Tr. 203. The V.E. testified that no skills or semi-skills obtained in past work would transfer to sedentary work. *Id.*

The V.E. then identified the skills that were not a requirement for the need to alternate sitting and standing that could be used in other work. Tr. 204. He included contacting people, meeting people, the process of selling, identifying the customers and determining the amount of products they

8

may need, mild persuasion in some cases, and closing a sale at the upper levels. *Id.* He indicated that the skills would apply to primarily to light work and the sales. *Id.* He also indicated that it would include a lot of telemarketing-type positions at the sedentary level. *Id.*

In terms of light, limited, semi-skilled jobs, using those skills, the V.E. identified: 1) salesperson, men's furnishings, DOT 261.357-054, light, semi-skilled, SVP 4, approximately 200 within the region, 22,000 in Texas, and 296,000 in the national economy; 2) sales person, china and silverware, DOT 270.357-018, light, SVP 4, approximately 100 in the region, 12,900 in Texas, and over 200,000 in the national economy; 3) salesperson of nursery products, DOT 272.357-022, light, SVP 4, more than 100 in the region, 13,000 in Texas, and 188,000 in the national economy; and 4) salesperson, flowers, DOT 260.357-026, light, SVP 4, more than 100 in the region, 4,500 in Texas, and 56,4000 in the national economy. Tr. 204-05. The V.E. stated there would be numerous others. Tr. 205.

In terms of sedentary jobs, the V.E. identified: 1) telephone solicitor, DOT 299.357-014, sedentary, unskilled, SVP 3, approximately 100 in the region, 3,600 in Texas, and 46,000 in the national economy; 2) order clerk, food and beverage, DOT 209.567-014, sedentary, unskilled, SVP 2, 195 in the region, 10,945 in Texas, and 139,000 in the national economy; 3) surveillance systems monitor, DOT 379.367-010, sedentary, unskilled, SVP 2, 75 in the region, 2800 in Texas, and 59,000 in the national economy. *Id.*

The ALJ then asked the V.E. to assume that the ALJ found the entire record to be credible, including the opinion of the treating doctor that Plaintiff is unable to sustain eight hours of sitting, standing and walking at any level. Tr. 206. The V.E. stated, in that circumstance, there would be no competitive work and the person would be nonemployable. *Id.*

9

## FINDINGS OF ADMINISTRATIVE LAW JUDGE

The ALJ found that, during the period under consideration, Plaintiff was a "younger individual between the ages of 45 and 49"; at the time of the ALJ's decision, Plaintiff was an individual "closely approaching advanced age" who has "more than a high school (or high school equivalent) education." Tr. 24. The ALJ found that Plaintiff has transferrable skills from his past relevant work. *Id.* The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. Tr. 23.

The ALJ noted that Plaintiff has an impairment or combination of impairments considered "severe," but found that such impairments were not severe enough to meet the Listing of Impairments in the regulations. Tr. 23. The ALJ concluded that the objective evidence undermined Plaintiff's credibility regarding his limitations. Tr. 23. The ALJ found that Plaintiff has the residual functional capacity to lift up to 20 pounds occasionally and 10 pounds frequently, to stand, sit and/or walk at least 6 hours in an 8-hour workday. *Id.* However, the ALJ found that Plaintiff should be limited to a low stress environment with simple to detailed but not complex job instructions. *Id.* Due to Plaintiff's limitations, the ALJ found that Plaintiff cannot return to his past relevant work. Tr. 23.

Instead, the ALJ found that Plaintiff has the residual functional capacity to perform a significant, though not full, range of light, semi-skilled work as defined in 20 C.F.R. § 416.967. Tr. 24. Based on the V.E.'s testimony and the evidence in the record, the ALJ found Plaintiff could make a successful adjustment to work that exists in significant numbers in the national economy, including work as a sales representative, men's furnishings; china and silverware salesperson; sales of nursery products; and work in flower sales. Tr. 24.

After a review of the medical evidence, consideration of Plaintiff's testimony, and the V.E.'s testimony, as well as consideration of Plaintiff's alleged disabling impairments, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  Tr. 23-24.

## STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards.  *See, e.g., Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990).  Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

However, the reviewing court does not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissoner's, even if the evidence weighs against the Commissioner's decision.  *Newton*, 209 F.3d at 452.  The Court may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  "The Commissioner, rather than the courts, must resolve conflicts in the evidence."  *Newton*, 209 F.3d at 452.  If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed.  42 U.S.C. § 405(g); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

11

## ANALYSIS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. § 404.1520.  First, the claimant must not be presently working at any substantial gainful activity.  20 C.F.R. § 416.972.  Second, the claimant must have an impairment or combination of impairments that is severe.  An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations.  Fourth, the impairment must prevent the claimant from returning to his past relevant work.  Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520 (b)-(f).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198.  If the claimant meets his burden, the burden shifts at step five to the Commissioner to show that there is other gainful employment that claimant is capable of performing in spite of his existing impairments.  *Id.; Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).  An ALJ may base a finding that a a claimant is capable of performing jobs available in significant numbers in the national economy on a V.E.'s testimony identifying jobs.  *See Carey v. Apfel*, 230 F.3d 131, 135, 147 (5th Cir. 2000).  If the Commissioner meets this burden, the claimant must then

prove he in fact cannot perform the alternate work. *Crowley*, 197 F.3d at 198.  If a claimant cannot perform his past work or other work, then the claimant qualifies as disabled.  20 C.F.R. § 404.1520 (e)-(f); *Sullivan v. Zebley*, 493 U.S. 521, 525-26 (1990).

In this case, the determination that Plaintiff was not disabled was made at the fifth sequential step.  Here, the ALJ found that Plaintiff was not disabled because, although he could not return to his past relevant work, he had the residual functional capacity to perform a significant range of jobs existing in significant numbers in the national economy.

### Did the ALJ Fail to Obtain the Testimony of a Medical Expert and Improperly Discount Plaintiff's Credibility?

Plaintiff argues that the ALJ failed to give *due consideration* to his pain. Pl.'s Br., at 9. Further, Plaintiff agues that the ALJ failed to obtain the testimony of a medical expert and, as a direct result, made a finding that plaintiff's subjective allegations of pain were credible "only to the extent consistent with a residual functional capacity for light work, despite notations in the record that Plaintiff was suffering "intractable pain."

Courts generally follow the requirements in 20 C.F.R. § 404.1529 for evaluating allegations of disabling pain and the resulting limitations on the ability to work.  Under the regulations, the ALJ must first determine whether there is a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain.  20 C.F.R. § 404.1529(b); SSR 97-7p. If the ALJ finds such an impairment, she then has to consider a variety of factors, including the claimant's daily activities and treatment for pain, to determine the extent to which the pain limits the claimant's ability to do basic work activities.  *Id.*  It is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and the ALJ's determination is entitled to considerable

deference. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). Subjective complaints of pain must also be corroborated by objective medical evidence. *Id.*

Although the ALJ must consider subjective evidence of pain, it is within her discretion to determine its debilitating nature, and such determinations are entitled to considerable deference. *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987). The ALJ's "determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

When assessing the credibility of an individual's statements, the ALJ is required to consider: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The Fifth Circuit has "recognized that an absence of objective factors indicating the existence of severe pain–such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition–can itself justify the ALJ's conclusion. *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988).

14

In accordance with the regulations, in determining the credibility of Plaintiff's subjective complaints of pain, the ALJ considered the entire case record, including the objective medical evidence, the individual's own statements about his symptoms, the factors listed in 20 C.F.R. § 404.1529, statements and other information by treating physicians, and statements and opinions provided by the V.E.  Although the ALJ noted that Plaintiff had chronic back pain, she determined that his pain was not disabling.  Tr. 20-21.

The ALJ evaluated Plaintiff's testimony in light of all the objective medical evidence and concluded that the evidence did not support his pain allegations to the extent alleged.  The ALJ noted that there is evidence that Plaintiff's pain was well controlled with medication.  Tr. 124, 152.  *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (noting that a condition that can be controlled by medication or therapy cannot serve as the basis for a finding of disability).  Further, the ALJ noted that there is evidence in the record that Plaintiff occasionally went grocery shopping, did some cleaning and cooking, cares for himself, his animals, and drives.  The ALJ noted that Plaintiff also testified that he enjoys raising shrubbery, trees and plants, and his medical records note that he engaged in ranching activities which included hauling feed sacks.

Finally, the ALJ noted that Plaintiff does not exhibit atrophy from disuse or nutritional deficits which could be expected after years of alleged intractable pain.  Tr. 20.  A review of the record reveals that Dr. Satyu specifically noted in September 2000 that Plaintiff exhibited normal movement in all extremities and no wasting of the muscles.  Tr. 138A.  Similarly, Dr. Raabe found noted that Plaintiff exhibited a good range of motion of the cervical spine and no significant tenderness to palpation.  Tr. 158.  Plaintiff's straight leg raising test was negative and the strength

15

in his lower extremities was 5/5 throughout.[4]  *Id.*

It must be remembered that "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled."  *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988).  The ALJ did not find that Plaintiff was completely lacking in credibility regarding pain.  Rather, while she did find objective evidence to support Plaintiff's complaints of chronic pain, she did not find that the pain he experienced was disabling.  Furthermore, it is within the sound discretion of the ALJ whether to retain an medical expert.  20 C.F.R. §§ 404.1527(f); 416.927(f).

Based on a review of the record, the Court finds that the ALJ's evaluation of the Plaintiff's subjective complaints of pain was based on the proper legal standards and was supported by substantial evidence in the record.

### Did the ALJ Properly Evaluate the Opinion of Plaintiff's Treating Physicians?

Plaintiff also challenges the ALJ's finding that the opinions of treating physicians concerning Plaintiff's total disability were not based on objective evidence.  Pl.'s Br., at 9.  Plaintiff contends that the ALJ erred in affording little weight to the opinions of his treating physicians that he was totally disabled.  *Id.*

The Social Security Regulations provide that all medical opinions are to be considered in determining the disability status of a benefits claimant.  20 C.F.R. §§ 404.1527(b), 416.927(b).  However, a statement made by a treating physician that a claimant is disabled does not mean that the claimant is disabled for purposes of the Social Security Act.  *See Carey*, 230 F.3d at 141 n.1; SSR

---

[4]Muscle strength is graded on a scale from zero to five, with zero meaning no movement and five representing normal strength.  The Merck Manual 1347 (17th ed. 1999).

16

96-5p (noting that the ultimate finding of disability is an administrative, not medical, finding). Opinions on ultimate issues, such as disability status under the regulations, are reserved exclusively to the ALJ.  *See Martinez*, 64 F.3d at 176 (stating that "the ALJ has sole responsibility for determining a claimant's disability status"); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

Although "the opinion and diagnosis of a treating physician should be [generally] afforded considerable weight in determining disability," and should often be given controlling weight, the ALJ may give the opinion little or no weight when good cause is shown, for instance where the opinion is conclusory or unsupported by the objective medical evidence.  *Newton*, 209 F.3d at 455 -56 ("A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.").

A finding that a treating source medical opinion is "not well supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in the case record" means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  *Newton*, 209 F.3d at 456.  When the ALJ determines that the opinion is not entitled to controlling weight, the regulations require the ALJ to consider several factors in deciding how much weight to give the opinion, such as the length of the treatment, the consistency of the opinion with the record as a whole, and the specialization of the treating physician.[5]  20 C.F.R. § 404.1527(d); *see also Newton*, 209 F.3d at 456.  The Fifth Circuit has held,

---

[5]The Social Security Regulations provide guidelines for the consideration of expert medical opinions of a claimant's treating physician.  20 C.F.R. § 404.1527(d)(2).  Consideration of a treating physician's opinions must be based on: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of the treating physician.  *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000).

though, that the ALJ need not consider each of the factors where "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *See Walker v. Barnhart*, No. 04 -31256, 158 Fed. Appx. 534 (5th Cir. Dec. 9, 2005).

Although the ALJ did not discuss every factor listed by the regulations, the ALJ engaged in a detailed discussion of the evidence, which included competing first-hand medical evidence that conflicted with the treating physicians' opinions as to Plaintiff's limitations, and there is substantial evidence to support her decision to place little weight on those opinions.  Significantly, just three months prior to Dr. Garrett's letter, Dr. Satyu performed a consultative examination on Plaintiff. Dr. Satyu observed that Plaintiff was in minimal distress.  Tr. 138.  Although Plaintiff's movements in his lumbar spine were limited, Plaintiff was able to bend down to 8 inches from the floor.  Tr. 138A.  Plaintiff had no gross motor or sensory deficits and exhibited a normal gait.  Id.  While x-rays taken that same day suggested paraspinous muscle spasm, Dr. Satyu observed that Plaintiff was able to sit, stand, and walk without any discomfort.  *Id.*  He was also able to walk on his heels and toes and tandem walk.  *Id.*  Dr. Satyu further noted that, although Plaintiff complained of pain on movements of his shoulders, elbows, and hands, the movements in all of Plaintiff's extremities was normal.  *Id.*  Plaintiff also exhibited no edema, cyanosis, clubbing, or wasting of muscles.  *Id.*

The report of Dr. Raabe, who examined Plaintiff several months after Dr. Garrett's letter, noted that Plaintiff exhibited a good range of motion of the cervical spine and no significant tenderness to palpation.  Tr. 158.  Plaintiff's straight leg raising test was negative and the strength in his lower extremities was 5/5 throughout.  *Id.*

Moreover, the Appeals Council noted that it had considered the opinion of W.R. Rodgers,

D.O., in November 2001, that Plaintiff was unable to work and not able to stand, lift, or bend for any appreciable length of time. However, as the Appeals Council pointed out, such information is immaterial to the issue of whether or not Plaintiff was disabled almost a year and a half earlier, on July 25, 2000, the date of the ALJ's decision.

In these circumstances, the ALJ did not err by placing little weight on the treating physicians' opinions that Plaintiff's conditions prevent him from walking a city block or render him permanently disabled. The ALJ was not required to accept the treating physician's opinions, but was required to consider them, and if she chose to reject them, to explain what conflicting evidence informed her choice. As discussed above, the ALJ did so. Although Plaintiff disagrees with the ALJ's resolution of the conflicting evidence, this Court must not substitute its judgment for that of the ALJ.

### Did the ALJ Properly Assess Plaintiff's Residual Functional Capacity and Plaintiff's Ability to Perform Other Work in the National Economy?

Last, Plaintiff challenges the ALJ's assessment of his RFC and argues that the ALJ erroneously characterized his RFC ability to perform light work. Plaintiff argues that the ALJ did not base her RFC determination on substantial evidence.

Residual functional capacity (RFC) is the maximum a plaintiff can do despite his functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545; SSR 83-10, at 7. The residual functional capacity assessment must identify the claimant's functional limitations or restrictions and assess the claimant's work-related abilities on a function-by-function basis, including the functions in 20 C.F.R. § 404.1545(b) before expressing residual functional capacity in terms of sedentary, light, medium, heavy, and very heavy exertional levels of work. SSR 96-8, at 1. Title 20 C.F.R. 404.1545(b) includes the functions of

walking, standing, sitting, pushing, pulling, lifting, carrying, and stooping.

The residual functional capacity assessment must address the claimant's "remaining exertional and nonexertional capacities." SSR 96-8, at 5.  Exertional capacity addresses limitations and restrictions of physical strength and defines the remaining "abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id.*  A fact finder must consider each function separately (e.g., the claimant can walk for 5 out of 8 hours and stand for 6 out of 8 hours), even if the final residual functional capacity assessment combines activities (e.g., walk/stand,, lift/carry, push/pull). *Id.*  Determining a plaintiff's residual functional capacity is the ALJ's responsibility. *Ripley v. Chater*, 67 F.3d 553, 557 (5th Cir. 1994).  Substantial evidence must support an ALJ's determination of a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.  20 C.F.R. § 404.1567(b); SSR 83-10.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  *Id.*  The full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday.  SSR 83-10.

 To be considered capable of performing a full or wide range of light work, and individual must have the ability to do substantially all of these activities.  *Id.*  If the Commissioner makes a decision that the plaintiff can perform less than the full range of some exertional level of work, the Medical Vocational Guidelines do not apply.  *Lawler v. Heckler*, 761 F.2d 195, 198 (5th Cir. 1985).  When the guidelines may not be utilized for decision- making, the Commissioner may only sustain

her burden of proof by producing expert vocational testimony concerning the existence and availability of jobs in the national economy which the Plaintiff can perform. *Id.* (citing 20 C.F.R. P. 404, Sub-part P, App. 2, § 200.000 (e)(1) and (2); *Harrell v. Bowen*, 862 F.2d 471 (5th Cir. 1988); *Fields v. Bowen*, 805 F.2d 1168 (5th Cir. 1986)).   Vocational experts testify by hypothetical questions, and the hypothetical put to the V.E. must conform to the ALJ's finding. *Herron v. Bowen*, 788 F.2d 1127 (5th Cir. 1986).

The questions posed to the VE by the ALJ reasonably incorporated all of the disabilities recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).  Based on the hypotheticals, the V.E. testified as to many jobs that would accommodate Plaintiff's RFC, including his limitations.  Further, as the ALJ pointed out, Plaintiff's activities belie his claim that he is totally disabled and unable to perform any type of work.  He continued to drive, to care for himself, and to perform manual labor at his house and ranch Tr. 20, 82, 184, 186, 191, 192.  Plaintiff himself opined that he believed himself capable of work.  Tr. 82, 123.  He testified that he believed he could have performed his former job full-time had he not been let go due to cut-backs.  Tr. 68, 186.

The Court finds that the ALJ's decision that Plaintiff retained the RFC to perform a significant range of light work and a significant number of jobs in the national economy is supported by substantial evidence and is a correct application of the law.

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the final decision of the Commissioner. A final judgment in favor of the Defendant will be entered consistent with this decision.

**SIGNED this 27th day of September, 2006.**

21

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE